

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHANNON D. MALINISH,

    Plaintiff,

v.                                           Civil Action No. 3:12CV338

CONSUMER PORTFOLIO SERVICES, INC.,

Serve: CT CORPORATION SYSTEM
          Registered Agent
          4701 Cox Road, Suite 301
          Glen Allen, Virginia 23060

    Defendant.

## COMPLAINT

### *I. INTRODUCTION*

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereinafter "FDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

### *II. JURISDICTION AND VENUE*

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k (d), 28 U.S.C. §1337. Venue in this District is proper in that the defendant transacted business in this state and this district and the plaintiff chooses to bring this action here.

### *III. PARTIES*

3. Plaintiff, Shannon D. Malinish, is a natural person residing in Manassas, Virginia.

4. Defendant, Consumer Portfolio Services, Inc. (hereinafter "CPS"), is a corporation engaged in the business of collecting debts in this state with its principal place of business located in Irvine, California. One of the principal purposes of CPS is the collection of debts using the mails and telephone and it regularly attempts to collect debts alleged to be due another.

5. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### *IV. FACTUAL ALLEGATIONS*

6. Plaintiff purchased a vehicle in 2008 from a dealer in Manassas, Virginia and the vehicle loan was financed through ACC Consumer Finance. At some point after the sale, Consumer Portfolio Services began collecting the debt on behalf of ACC Consumer Finance, or a successor.

7. In October, 2011 Plaintiff fell behind on her payments. She asked CPS and was granted an extension and her payments which were to resume in December 2011. See Installment Credit Extension Agreement attached as **Exhibit A.**

8. On January 10, 2012 Plaintiff was in a working interview when CPS called. Plaintiff left a voice mail for them asking them not to call her again but CPS called again 10 – 20 minutes later from a blocked number.

9. On January 17, 2012 a "Mr. Gomez" called from CPS. He did not tell Plaintiff he was attempting to collect a debt.

10. On January 19, 2012 Mr. Gomez called again this time stating the call "was an attempt to collect a debt" after Plaintiff called to stop harassing her.

11. On January 23, 2012 Plaintiff received a call on her voice mail from CPS stating ". . .we are not able to stop any actions moving forward. . . your vehicle is now in repossession status. If you plan to keep the unit please call me by 2:00 p.m., 5:00 p.m. your time. . .this is not right you're not calling me. . . if you do not cooperate we will have no choice. . . why are you playing with us like this?" and left a number of 949 788-5685 for Plaintiff to call. Plaintiff believes this call was from "Rose," a heavily accented employee of CPS who had left messages before.

12. On January 26, 2012 Plaintiff received a message from "Brian" at CPS stating that "the account was sent to him for final review" and left a number for Plaintiff to call him of 800 507-8840, extension 15833.

13. CPS also continually contacted a friend of Plaintiff's, Angelina Liston. Ms. Liston received four or more calls from CPS either leaving messages or speaking to Ms. Liston in person that she should tell Plaintiff "tell her to call us regarding her car going into repo status." Then in subsequent calls CPS would ask Ms. Liston if she gave Plaintiff the message and when she replied that she had done so, CPS asked Ms. Liston what she (Plaintiff) was planning to do. Ms. Liston changed her number and does not know how CPS acquired it.

14. CPS called Plaintiff's neighbor, Elizabeth McGill, whom she barely knows. Elizabeth asked Plaintiff if she had provided her as a reference for something and she had not. When CPS called Ms. McGill she was told by the caller (a heavily accented woman whom Plaintiff believes to be "Rose") who asked Ms. McGill to give Plaintiff a message about her car payment being overdue. Ms. McGill informed "Rose" that she did not know the Plaintiff and that she would not deliver such a message. Ms. McGill received a second call from a young Hispanic sounding woman who was very rude and pushy. That woman insisted Ms. McGill knew the Plaintiff personally and was just "covering for her." Ms. McGill informed the caller that she did not know anyone by that last name yet the caller continued to be very rude and accuse her of "covering up" her knowledge of the Plaintiff. Only when Ms. McGill informed the caller that she knew her call was a tactic used by collection agencies in that an agency will obtain phone numbers of neighbors near the client's address and attempt to reach the client that way did the caller become very defensive and hung up on Ms. McGill. She does not believe the caller identified herself as being from an agency.

15. From January 25, 2012 to January 28, 2012 alone CPS called Plaintiff more than 23 times.

16. The constant harassment and threatening telephone calls (5-6 times per day) and calls to her friends and neighbors from CPS has caused Plaintiff embarrassment, inconvenience, and emotional distress.

17. Within the one year preceding the filing of this complaint, Defendant violated the FDCPA in multiple ways, including but not limited to:

4

a) Making multiple calls to Plaintiff's neighbor, Elizabeth, for reasons other than locating plaintiff, and for calling her more than once even though Elizabeth did not request the defendant do so, and when the defendant had no reason to believe Elizabeth's response was inaccurate; §1692b (3);

b) Making multiple calls to Plaintiff's friend, Angelina Liston, for reasons other than locating her; §1692b (3);

c) Telling Plaintiff's neighbor, Elizabeth, that her name was provided as a reference when it was not; §1692e (10);

d) Threatening to cancel contract of forbearance without intent to do so; §16292(e)(5);

e) Threatening to repossess Plaintiff's vehicle without intent to do so; §16292(e)(5);

f) Failing to validate the debt at the time of initial contact and/or in writing within five days thereafter §1692g (a); and

g) Engaging in conduct of which the natural consequence is to harass, oppress, or abuse and being verbally abusive in connection with the collection of the alleged debt. §1692d (2)(5).

18. As a result of the acts alleged above, plaintiff was significantly embarrassed. Became anxious, and caused her loss of sleep, loss of appetite, and consequently she suffered actual damages from her emotional distress.

## V. FIRST CLAIM FOR RELIEF

19. Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs.

20. Defendant violated the FDCPA as noted above.

21. As a result of the above violations of the FDCPA, the defendant is liable to the plaintiff for plaintiff's actual damages, statutory damages, costs, and attorney fees.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the defendant for the following:

A. Actual and statutory damages pursuant to 15 U.S.C. §1692k;

B. Costs and reasonable attorney fees pursuant to 15 U.S.C. §1692k; and

C. For such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Respectfully submitted,

SHANNON D. MALINISH,

_____
Counsel for Plaintiff

John Cole Gayle, Jr.
VSB No. 018833
The Consumer Law Group, P.C.
5905 West Broad Street, Suite 303
Richmond, Virginia 23230
(804) 282-7900
(804) 673-0316 fax
jgayle@theconsumerlawgroup.com

Counsel for Plaintiff